# In the United States Court of Federal Claims

No. 22-132C
(Filed: April 22, 2022)
(Re-Issued: April 26, 2022)[1]

* * * * * * * * * * * * * * * * * * * *

FREEALLIANCE.COM, LLC,

         *Plaintiff*,

v.

THE UNITED STATES,

         *Defendant*.

Bid protest; pre-award bid protest; the "late is late" rule.

* * * * * * * * * * * * * * * * * * * *

*Walter B. English*, Huntsville, AL, for plaintiff, FreeAlliance.com, LLC, with whom were *Jon D. Levin, Emily J. Chancey, Joshua B. Duvall,* and *Nicholas P. Greer*, of counsel.

*Jana Moses*, Trial Attorney, United States Department of Justice, Civil Division, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General*, Patricia M. McCarthy*, Director, and *William J. Grimaldi*, Assistant Director, for defendant. *Jonathan D. Tepper*, and *Timothy G. Kelly*, Internal Revenue Service, of counsel.

OPINION

BRUGGINK, *Judge.*

In this pre-award bid protest, Freealliance.com, LLC ("FreeAlliance") alleges that the decision of the United States Department of the Treasury, Internal Revenue Service (the "IRS") to reject plaintiff's proposal as late was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

---

[1] This opinion was originally issued under seal in order to afford the parties an opportunity to propose redactions of protected material. The parties agree that no redactions are necessary. The opinion thus appears in full.

Plaintiff filed its motion for judgment on the administrative record on March 15, 2022. Plaintiff seeks a permanent injunction preventing the agency from commencing evaluation of proposals and making an award determination without consideration of plaintiff's proposal and requiring the agency to include plaintiff's proposal in the award analysis. The government filed its response to plaintiff's motion, along with its cross-motion for judgment on the administrative record. All motions are fully briefed.

Oral argument was held on April 20, 2022. Because the agency's exclusion of plaintiff's proposal was neither illegal nor arbitrary we deny plaintiff's motion for judgment on the administrative record and grant the government's cross-motion.

BACKGROUND[2]

A. Solicitation

On November 24, 2020, the IRS issued a request for quotation ("RFQ" or "solicitation"), seeking to award a single Blanket Purchase Agreement ("BPA") set aside for small business concerns presenting the best value to the government. The solicitation also explained that the acquisition would be conducted under FAR 8.405, and thus "the contracting techniques under FAR 15.3 do not apply." Solicitation, Administrative Record ("AR") at 1. The solicitation further states that "[a]s such, the government is not obligated to determine a competitive range, conduct discussions with all contractors, or solicit final revised quotes." AR 1

The solicitation instructs that the "acquisition will be conducted utilizing a multi-phased down select approach." AR 2. Vendors must meet requirements for Phase 1, rated on a pass/fail basis, to be considered for Phase 2. If a bidder fails Phase 1, the solicitation states that the vendor will not be invited to participate in Phase 2. The solicitation also states that vendors will be notified via email whether they are invited to participate in Phase 2.

Phase 1 requires vendors to submit the following four factors: (1) Relevant Experience; (2) Commitment letters; (3) Active CMMI Level 3 Certification; (4) Task Order #1 Rough Order of Magnitude ("ROM"). AR

---

[2] The facts in the background are derived from the administrative record (ECF No. 20).

2. Phase 2 evaluates vendors in light of four factors: (1) Technical Approach; (2) Management Approach; (3) Past Performance; (4) Cost/ Price.

The solicitation instructs that Phase 1 vendor responses shall be submitted via GSA eBuy, and that submissions "must be prior to GSA eBuy submission date(s) stated in eBuy." AR 3. For Phase 2, the solicitation states that "Quote(s) must be received by TBD." AR 4.

### B. Solicitation Amendments and Corrective Action

On December 10, 2020, the agency issued Amendment I, which set the deadline for Phase 1 submissions on December 21, 2020. On December 18, 2020, the agency issued Amendment II to respond to questions and update the solicitation's attachments.

On February 11, 2021, the agency emailed FreeAlliance and five other offerors, notifying them that their Phase 1 submittals were successful and inviting them to participate in Phase 2. The agency's email states that the deadline for questions was February 18, 2021, and the deadline for quotations was February 25, 2021, at 3:00 pm.

On June 14, the agency told FreeAlliance that it selected Cybermedia for award. FreeAlliance protested the award here. On July 15, 2021, the agency sua sponte took corrective action and committed to cancel the award to Cybermedia, re-evaluate quotations and make a new best value determination. In light of the corrective action, FreeAlliance dismissed its protest, without prejudice.

As part of its corrective action, the agency sent an email enclosing Amendment IV to the Phase 2 participants on December 9, 2021. On page one of the five-page amendment, the agency states that "[t]he purpose of this amendment is to provide revisions to the solicitation as listed herein. Accordingly, IRS IRPD RFQ 8049 is revised as identified on the following pages." AR 470.

Page one of Amendment IV also states "[e]xcept as provided herein, all terms and conditions of the [solicitation] remain unchanged and in full force and effect." *Id.* Page one of Amendment IV set a deadline for questions on December 15, 2021, and a deadline for revised quotes as January 19, 2022. It also told vendors that they had to respond to the amended solicitation: if responses were not "received by the deadline identified above, the vendor [will be] considered non-responsive and

3

removed from consideration for award," and "[a]ny proposal that does not fully comply with the amended solicitation will be ineligible for award." *Id.*

In response to the agency's amendment, FreeAlliance sent an email to the contracting specialist, Ms. Catherine Kennedy, with several questions. On January 18, 2022, the agency emailed vendors again, this time sending an Amendment IV "clarification statement." AR 640. The clarification statement extended the quotation deadline to January 21, 2022, at 12:00 p.m. EST.

### C. FreeAlliance's Submission Attempt

FreeAlliance alleges that on January 21, 2022, at 11:51 a.m., it attached its revised quotation to an email to the contracting specialist and other government personnel. Because it did not receive a delivery receipt for its 11:51 a.m. email, Mr. Yash Gupta, an employee at FreeAlliance, sent a 12:03 p.m. "test message" to the contracting specialist, without attachments, to determine if the earlier message had gone through, "Sending test message here to see if we receive delivery receipt." AR 691. At 12:10 p.m., the contracting specialist responded to Mr. Gupta's "test message" and wrote: "Hello Yash, your email did not contain any attachments. Please zip the attachments and send or send in separate emails. Thank you, Catherine." AR 691. The contracting specialist copied the contracting officer on her email.

At 12:15 p.m. that same day, FreeAlliance sent its quotation in a zip file to everyone copied on the contracting specialist's email. At 3:00 p.m., FreeAlliance wrote the contracting specialist for confirmation that the Agency had "received [FreeAlliance's quotation] and will evaluate it." AR 724. At 3:47 p.m., the contracting specialist asked the Agency's IT department to provide "Urgent Email Tracking Assistance" by determining "the exact time [FreeAlliance's 11:51 email] was initially received by the IRS server." AR 737.

After IRS's technology personnel confirmed that FreeAlliance's email reached IRS's server at 12:06 p.m., the contracting specialist emailed FreeAlliance to inform the company that its response "is ineligible for award per the instructions established in the solicitation and has been removed from consideration for award." AR 748-51. In a letter attached to the same email, the agency explained that it made that determination because,

> In accordance with the Federal Acquisition Regulations (FAR), the Agency is bound by the selection procedures set forth in the solicitation as well as the "late is late" rule, a

4

>contractor's proposal must be received by the Government by the time stated in the solicitation.

AR 749. The letter states that the agency did not receive FreeAlliance's email until 12:06 p.m. which "per the express terms of the solicitation and the terms of the FAR," meant that FreeAlliance could not participate in the competition. *Id.* This protest followed.

## DISCUSSION

Our review is deferential in accordance with the standard set forth in the Administrative Procedures Act, 5 U.S.C. § 706 (2018), which is to say that we review agency action in a procurement for illegality and a lack of rationality. *Impressa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001). So long as the agency's decision was not irrational or otherwise illegal, we will leave it undisturbed.

Plaintiff challenges the agency's decisions in two respects: (1) the "late is late"[3] rule does not apply because the original solicitation did not incorporate any explicit FAR timing requirement and the amendment purporting to impose one was ineffective; (2) the agency's decision not to waive the quotation deadline for FreeAlliance was arbitrary and irrational.[4]

---

[3] The colloquial expression of the notion that, if the solicitation contains a provision dictating that proposals must be submitted by a time certain, they can be excluded from consideration. *See Criterion Sys., Inc. v. United States*, 144 Fed. Cl. 409, 414-15 (2019) (internal citations omitted) ("Agencies must provide offerors with a common set of selection procedures, follow those procedures, and apply the procedures equally to all quotes."); *see also Advanced Decision Vectors, Inc.*, B-412307; 2016 WL 125354 (Jan. 11, 2016) ("Where, as here, the RFQ contains a late submission provision that quotations must be received by a stated deadline to be considered, quotations cannot be considered if received after the deadline."). "The 'late is late' rule prohibits an agency from accepting a proposal, proposal modifications, or revisions after the deadline for proposals established by the agency in a solicitation." *Naval Sys. United States*, 153 Fed. Cl. 166, 189 (2021) (internal citations omitted). The timeliness requirement is often incorporated into a solicitation by various FAR provisions. *See* FAR 52.212-1(f); FAR 52.215-1(c)(3)(i). Here, there was no reference to a FAR timeliness provision.

[4] Plaintiff withdrew counts one and two of its complaint, which alleged

Plaintiff seeks permanent injunctive relief preventing the IRS from making an award determination without consideration of plaintiff's quotation and requiring the agency to include plaintiff's proposals in the award analysis.

When considering whether to grant a permanent injunction, the court must consider whether "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). Although an award of injunctive relief is based on consideration of this four-factor test, failure to achieve success on the merits is dispositive. *See Career Training Concepts, Inc. v. United States*, 83 Fed. Cl. 215, 219 (2008) ("[A] permanent injunction requires actual success on the merits."). For the reasons below, we find that plaintiff's challenges lack merit and it is therefore unnecessary to consider the last three factors.

   A. The Late Proposal Provision in Amendment IV Modified the Solicitation

Plaintiff asserts that because the agency did not include a late proposal provision in the original solicitation and because Amendment IV did not incorporate one or more of the FAR provisions of the late is late rule,[5] that rule does not apply to the solicitation. *See, e.g.*, *Informatics Applications Grp., Inc. v. United States*, 132 Fed. Cl. 519, 527 (2017) (government properly excluded a quote because it incorporated FAR 52.212-1 into the request for quotations); *see also Vs Aviation Servs.*, LLC, B-416538, Oct. 3, 2018, 2018 CPD ¶ 347.

Although page one of Amendment IV states on the first page that the government will not consider late quotations, plaintiff asserts that this statement does not modify the solicitation because the timing reference is on page one, which also contains the language that the solicitation "is revised as identified on the *following* pages." AR 470 (emphasis added). According to

---

exceptions to the application of the late is late rule.

[5] Further, plaintiff points out that the solicitation incorporates FAR Part 8 which disavows all of FAR Part 15's contracting techniques.

plaintiff, it follows that only pages two through five of Amendment IV can modify the solicitation.[6]

The government asserts that plaintiff's interpretation of Amendment IV is unreasonable because it ignores the plain text of the amendment. We agree. When the amendment is read in its entirety, it is clear that the agency intended for all five pages of the amendment to modify the solicitation.[7] Plaintiff treats page one of the amendment as merely a cover page, whereas the amendment identifies the first page as page one of a five-page document. AR 470. Following page one are four additional pages of the amendment. Additionally, other language included on page one of the amendment demonstrates that page one itself amends the solicitation: "the purpose of this amendment is to provide revisions to the solicitation as listed herein." AR 470.[8]

---

[6] Plaintiff argues that this case is similar to *E.W. Bliss Co. v. United States*, 33 Fed. Cl. 123 (1995), in which the court found that, because an amendment specifically identified pages which it replaced in the solicitation, any pages which were not specifically identified in the amendment did not modify the solicitation. The facts in that case were very different, however, and we view plaintiff's reliance as an overreading of *Bliss*. The purpose of the amendment in that case "was to direct bidders to enumerated changes." *Id.* at 136. The court found that the agency's "failure to notify plaintiff that it was replacing page 40 of a 76-page document, while expressly notifying plaintiff that it was replacing pages 2, 11, 18, 34, and 76," was improper. *Id.* It is important to note, in any event, that this issue was not determinative in that case.

[7] Additionally, plaintiff contends that because the agency's clarification statement restates the due date but does not repeat the late proposal statement on Amendment IV's cover page, the late proposal provision is not part of the amendment. The clarification statement, sent via email, stated that "The response deadline has been extended to 12 NOON EST Friday, January 21." AR 640. We find that there was no need for the agency to restate the late proposal provision in its clarification statement, because the agency did not intend to clarify or amend its position on accepting late quotations. The agency only clarified its position on the date of the deadline.

[8] Defendant correctly notes that FreeAlliance considered page one as part of the amendment when it accepted the deadline for submission of questions in response to Amendment IV, as evidenced by its December 15, 2021, email to the contracting specialist. AR 492-93.

Page one of Amendment IV states that "All vendors are required to submit a response to the amended solicitation. If responses are not received by the deadline identified above, the vendor is considered non-responsive and removed from consideration for award." *Id.* These provisions demonstrate that the solicitation required a vendor to submit its response by the deadline for the submission to be deemed timely and to be considered for award. The fact that the original solicitation was not explicit in this respect, or that the amendment did not incorporate a specific FAR timing provision is irrelevant. The amendment was enforceable on its terms.

    B. It was Reasonable for the Agency not to Waive the Deadline for FreeAlliance

Plaintiff next argues that, if the amendment was enforceable, it was nevertheless arbitrary for the IRS not to exercise its discretion to waive plaintiff's late submission, and that in fact the contract specialist did so when she asked plaintiff, after the submission deadline, to "zip the attachments and send or send in separate emails. Thank you, Catherine." AR 691.[9] Plaintiff argues that the agency waived the submission deadline because the contracting specialist knew that the deadline passed but still invited plaintiff to submit its attachment.

FreeAlliance asserts that the government has the discretion to waive minor informalities, such as a delivery delay, even when the solicitation includes a late proposal provision. *See, e.g.*, 48 C.F.R. § 52.215-1(f)(3). Thus, plaintiff argues that it would be unreasonable for the government not to waive the submission deadline because it is a minor informality. Pl.'s Mot. at 13 (citing *Electronic On-Ramp, Inc. v. United States*, 104 Fed. Cl. 151 (2012) (finding that because the protestor timely submitted its proposal via email, the agency should have waived the late delivery of the paper copy as a minor informality).[10] FreeAlliance argues that if the agency did not waive

---

[9] Plaintiff references as support a GAO opinion, *Robinson*, B-417323 (May 16, 2019) ("As a general matter, we have found that language in an RFQ requesting quotations by a certain date does not establish a firm closing date for receipt of quotations, absent a late submission provision expressly providing that quotations must be received by that date to be considered."). Here, of course, there was an express late submission provision.

[10] Although FreeAlliance cites to *Electronic On-Ramp, Inc* as support for its argument, in that case the agency "received a version of the proposal" from the offeror before the deadline, a critical fact that is not present here. *Elec. On-Ramp, Inc.*, 104 Fed. Cl. at 166-67.

the deadline, then it was arbitrary and irrational for it not to do so.

In its motion, the government correctly points out that the contracting specialist's 12:10 p.m. email was merely in response to FreeAlliance's "test message," and not a statement that the agency waived the deadline. AR 691. We agree that this one email response does not indicate that the agency waived the submission deadline for FreeAllaiance. The record shows that after FreeAlliance sent its quotation to the agency at 12:15 p.m., FreeAlliance asked the contracting specialist if the agency "received [FreeAlliance's quotation] and will evaluate it." AR 724. The contracting specialist then asked the agency's IT department to determine "the exact time [FreeAlliance's 11:51 email] was initially received by the IRS server." AR 737. After determining that FreeAlliance's quotation came in after the deadline, the contracting specialist notified plaintiff that it was removed from consideration for award because,

> In accordance with the Federal Acquisition Regulations (FAR), the Agency is bound by the selection procedures set forth in the solicitation as well as the "late is late" rule, a contractor's proposal must be received by the Government by the time stated in the solicitation.

AR 749. Thus, the record does not show that the agency waived the deadline for plaintiff, even assuming the contract specialist had authority to waive the requirement.

We disagree with plaintiff's argument that the agency had authority to waive the deadline as a minor informality. That exception applies in procurements governed by FAR Parts 12 and 15. *See* 48 C.F.R. § 52.215-1(f)(3); 48 C.F.R. § 52.212-1(g). This solicitation, however, is conducted under FAR Part 8.

While matters within an agency's discretion are afforded deference, an agency is still required to enforce the terms of a solicitation. *See IAP World Servs. v. United States*, 152 Fed. Cl. 384, 397 (2021) ("Although this Court gives deference to agency determinations, that deference is not without limits, and agencies must follow the terms of their solicitation when awarding a contract.")[11]

---

[11] Plaintiff asserts that the government has incredible leeway and discretion because this solicitation was contracted under FAR Part 8's simplified procurement procedures. It does not follow, however, that an agency can waive a solicitation's late proposal provision simply because it is contracted

9

Thus, because FreeAlliance's quotation arrived after the submission deadline it was rational for the agency to follow the terms of the solicitation procedures and reject FreeAlliance's submission as late. *See Criterion Sys., Inc.*, 144 Fed. Cl. at 415 ("[n]inety seconds late may appear to be a minimal infraction, but deadlines are set for a reason, and an agency's strict adherence to a deadline places all bidders on an equal footing and avoids the sorts of issues Criterion is seeking to raise here.").

## CONCLUSION

We conclude that the IRS properly rejected plaintiff's quotation as late pursuant to the terms of the solicitation. Not having shown success on the merits, we need not consider the other injunctive factors. No relief is warranted. Accordingly, plaintiff's motion for judgment on the administrative record is denied and defendant's cross-motion is granted. The Clerk of Court is directed to enter judgment for defendant. No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge

---

under FAR Part 8.